UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GINGER N.,[1]                                    )
                                                 )
                 Plaintiff,                      )
                                                 )
          v.                                     )          No. 1:25-cv-2332-MJD-JPH
                                                 )
FRANK BISIGNANO, COMMISSIONER OF                 )
SOCIAL SECURITY,                                 )
                                                 )
                 Defendant.                      )

**ENTRY ON JUDICIAL REVIEW**

Claimant Ginger N. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1382.  For

the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.  Background**

Claimant applied for SSI in February 2023, alleging an onset of disability as of January 1,

2020.  [Dkt. 9-5 at 4.]  Claimant later amended her alleged onset date to her application date of

February 1, 2023.  [Dkt. 9-5 at 24.]  Claimant's application was denied initially and again upon

reconsideration, and a hearing was held before Administrative Law Judge Jeffrey Ciegel ("ALJ")

_____

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

on October 2, 2024.  [Dkt. 9-2 at 35.]  On October 30, 2024, ALJ Ciegel issued his determination that Claimant was not disabled.  *Id.* at 16.  The Appeals Council then denied Claimant's request for review on September 18, 2025.  *Id.* at 7.  Claimant timely filed her Complaint on November 14, 2025, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c.  Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled.  20 C.F.R. § 416.920(a)(4).  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record."  *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).  If, at any step, the ALJ can make a

2

conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).  While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872.  That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it.  See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025).  This is the standard the Court will apply in this case.

### III.   ALJ Decision

ALJ Ciegel first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of February 1, 2023.  [Dkt. 9-2 at 16.]  At step two, the ALJ found that Claimant had the following severe impairments:  "gastroesophageal reflux disease with history of gastroparesis, dysphagia, ulcerative proctitis; obesity; migraines [sic] headaches; lymphedema; connective tissue disorders with Sjogren and systemic lupus erythematosus (SLE) features; fibromyalgia; polyneuropathy; history of non-STEMI (ST elevation myocardial infarction); anxiety; and depression." *Id*. at 18.  At step three, the ALJ found that Claimant's

impairments did not meet or equal a listed impairment during the relevant time period.  *Id.* at 19.

The ALJ then found that, during the relevant time period, Claimant had the residual functional

capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can only stand and/or walk for 4 hours total during an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; frequently handle and finger bilaterally; never have exposure to hazards such as unprotected heights, machinery with moving mechanical parts, or operating a motor vehicle; have no exposure to extreme heat/cold; occasional exposure to vibrations; can never use foot controls; tolerate occasional exposure to wetness, humidity, or atmospheric conditions (fumes, odors, dust, gases, poor ventilation); and tolerate no more than a moderate noise level as defined in the Selected Characteristics of Occupations (SCO).  The claimant can understand, remember, and carry out detailed but not complex instructions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas, but end of day quotas would be acceptable; could deal with occasional changes in a routine work setting; could have frequent interaction with coworkers and supervisors that does not involve team-based activities or work in tandem with others; and occasional and nontransactional interaction with the general public.

*Id.* at 21.

At step four, the ALJ found that Claimant had no past relevant work.  *Id*. at 26.  At step

five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant

was able to perform jobs that exist in significant numbers in the national economy, such as stock

clerk, office clerk, and administrative support.  *Id*. at 27.  Accordingly, the ALJ concluded

Claimant was not disabled.  *Id.*

### IV.  Discussion

Claimant argues that "[t]he ALJ failed to account for the 'total limiting effects' of

Plaintiff's severe impairments and appropriately determine whether her testimony was consistent

with the record, as required by 20 C.F.R. §§ 416.920c, 416.929, and 416.945."  [Dkt. 13 at 11.]

The Claimant takes issue with both the ALJ's treatment of the medical opinions of record and the ALJ's assessment of her subjective symptoms allegations.

The Court will start with the latter.  When asked at the hearing "what has been the biggest problem you've been having that keeps you from [working]," Claimant testified as follows:

> I have a hard time walking.  I can't walk very far and then my legs will like cramp up real bad and I have (inaudible) they're golf ball sized and they're almost like cartilage.

> And then right in the middle of [my] back hurts.  There's something there that hurts.  It's so bad that you know how you go to take that last step and you're just like, ah?  Mine is I start to cry because it's still too far away.

> And I have diarrhea all of the time, constant diarrhea and I never know when that's going to [h]it me so of course, I've had accidents.

> And I just really can't concentrate very well.  I'm very sick in the mornings.  I take like 20 pills in the morning so from 8:00 till noon, like I'm really bad.

[Dkt. 9-2 at 42.][2]   Claimant also testified that she uses a walker around the house and a wheelchair if she has to go out somewhere because she has balance issues that cause her to fall backwards, her "legs are so weak they feel like they're going to buckle," and she had a painful "cyst or something" behind her right knee.  *Id.* at 47-48.[3]

When assessing a claimant's subjective symptoms, an ALJ must complete a two-step process.  First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3.  Second,

---

[2] By the Court's count, as of August 2024, Claimant was taking fourteen different prescription medications and several over-the-counter medications and supplements, also prescribed by her doctors, one or more times per day, as well as using another seven prescription medications as needed for pain and other symptoms.  *See* [Dkt. 9-12 at 72-75].

[3] Claimant was diagnosed with a right popliteal fossa cyst in July 2023.  [Dkt. 9-9 at 416.]

"once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."

If the ALJ had fully credited Claimant's testimony about her subjective symptoms, a finding of disabled would have been dictated. The ALJ did not fully credit Claimant's testimony, however, and instead concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 9-2 at 22.]   The ALJ further stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence does not support the severity alleged. The claimant testified that she uses a walker or cane around the house, and a wheelchair when leaving the house. However, the claimant regularly has normal gait and station, with no mention of an assistive device, in 2023, and as recently as July 2024 (Exhibits 6F, 10F/20, 20F/5, and 29F/5). The claimant was noted as using a walker and brace, and receiving back injections for back pain, in 2024. However, the claimant's physical exam showed normal gait and strength (Exhibit 33F) and at other visits, such as July 2024 (Exhibit 29F/5) the claimant had normal gait with no assistive device. If the claimant did require and [sic] assistive device, it was for a short period of time.

[Dkt. 9-2 at 22.]  There is no medical evidence of record suggesting that a person who has a normal gait when observed during medical examinations cannot also require an assistive device. The ALJ reached that conclusion on his own. Claimant's treating physician reached the opposite conclusion, prescribing a wheelchair for Claimant on July 10, 2024. [Dkt. 9-12 at 87.]  Claimant was not asked, and did not say, when she started using a walker and a wheelchair, and the ALJ

apparently did not consider the possibility that her condition worsened over time, thus explaining why she was not observed using an assistive device for earlier medical appointments.  Indeed, at a June 19, 2024, appointment, Claimant complained that for the past month she had been experiencing pain and cramping in her feet and calves that caused her to have difficulty walking for more than 2 minutes, which the physician associated with Claimant's connective tissue disorder.  *Id.* at 107.  During a July 23, 2024, visit with her neurologist, Claimant complained of worsening neuropathy in her legs and pain in her feet.  [Dkt. 9-11 at 220.]  Decreased sensation in her feet and toes was noted.  *Id.* at 224.  Her dosage of gabapentin was increased to address what the neurologist diagnosed as idiopathic progressive—i.e., worsening over time—neuropathy.

Other than his unsupported conclusion that the objective medical evidence—Claimant's normal gait—contradicted Claimant's need for a wheelchair that was prescribed by her treating physician, the ALJ articulates no other reason for discrediting Claimant's testimony about her subjective symptoms.  The ALJ does not discuss Claimant's daily activities or acknowledge the vast number of medications Claimant has been prescribed and the other treatments she has undergone.  These failures contravene SSR 16-3p, which states that the Commissioner "will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled" and that, in addition to the objective medical evidence, the Commissioner will consider factors including, but not limited to, the claimant's daily activities, the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and the effectiveness of the claimant's medication or treatment," and "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms."

In addition, the ALJ did not explain why he believed Claimant could stand and walk for four hours per workday simply because she has a normal gait. He also did not address whether the other symptoms alleged by Claimant—including persistent diarrhea and back pain—were consistent with the medical evidence. Thus, in addition to failing to fulfill his obligation under SSR 16-3p, the ALJ failed to issue an opinion that "'build[s] an accurate and logical bridge' from the evidence to its conclusion." *Swiecichowski v. Dudek*, 133 F.4th 751, 756 (7th Cir. 2025) (quoting *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)). Remand is therefore required.

The Court will also briefly address Claimant's arguments regarding the ALJ's treatment of the medical opinions of record. Both the consultative examiner, Nurse Practitioner James Franklin, and Claimant's treating physician, Michelle Gilliatte, M.D., opined that Claimant had limitations significantly greater than those found by the ALJ. *See* [Dkt. 9-7 at 570, Dkt. 9-9 at 398].[4] With regard to the former, the ALJ noted that N.P. Franklin's examination occurred

---

[4] The Commissioner states the following in his brief:

> Ultimately, Plaintiff provides no objective support for her challenge to the ALJ's residual functional capacity finding, nor does she attempt to demonstrate any specific additional limitations that are supported by the objective record. *See Jozefyk v. Berryhill*, 923 F.3d [492,] 498 [(7th Cir. 2019)] ("even if the ALJ's RFC assessment was flawed, any error was harmless because it is unclear what kinds of work restrictions might address [claimant's] limitations . . . because he hypothesizes none" and "the medical record does not support any").

[Dkt. 14 at 9-10.] The citation to *Jozefyk* is misplaced, as the record in this case does, in fact, contain the opinion of Claimant's treating physician which includes such work restrictions. The Commissioner also argues that "[a]side from her exclusive reliance on Mr. Franklin's and Dr. Gilliatte's opinions, [Claimant] cites no evidence supporting her assertion that she should have been more limited than the ALJ's finding as to her residual functional capacity." *Id.* at 8. That argument ignores the fact that Claimant's own testimony constitutes evidence. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (citing *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)) ("But Hill *testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.").

during a time when Claimant was experiencing significant swelling in her legs and abdomen, but

that those symptoms were temporary and resolved after a few months.  Thus, the ALJ found N.P.

Franklin's opinion to be "unsupported by the evidence as a whole." [Dkt. 9-2 at 24.]  This

finding is supported by substantial evidence.  The problem is that the Commissioner apparently

found a consultative examination to be necessary to the resolution of Claimant's claim, but the

examination ultimately was unhelpful because it was conducted at a time that was not

representative of Claimant's normal condition.  On remand, the Commissioner should consider

whether ordering a second consultative examination is appropriate.

> With regard to Dr. Gilliatte's opinion, the ALJ stated:

> Dr. Gillialle [sic] filled out a check box/circle medical source statement on July 10, 2024, reporting significant limitations including that the claimant had moderate limitations in activities of daily living, following basic instructions and staying on task; slight limitations in social functioning and sustaining concentration, persistence, and pace; but marked limitations in dealing with normal work stress, reporting to work on time, and working with others.  Dr. Gillialle [sic] noted that the claimant could sit, stand, and walk for less than 1 hour at a time; would need the ability to  change positions at will roughly every 10-15 minutes; would have to sit for prolonged periods; could occasionally lift/carry up to 10 pounds but never more; occasionally handle, finger, or reach, but never stoop, kneel, or crouch; need a wheeled and seated mobility device; would miss over 5 days a month, would be off task over 25% of the time, and would need unscheduled breaks of greater than 45 minutes during an 8-hour workday along with other limitations (Exhibit 19F).  This opinion is internally inconsistent, noting slight limitation in social functioning but a marked limitation in working with others.  The opinion is unsupported by the evidence as a whole. The opinion suggests the claimant require [sic] a wheeled and seated assistive device, but the claimant's physical exam the same month showed normal gait and station with no assistive device (Exhibit 29F).  This opinion is excessively limited and unsupported by the entire record, as discussed above, and therefore unpersuasive.

[Dkt. 9-2 at 25-26.]  It is entirely unclear how it is inconsistent to find a slight limitation in

maintaining social functioning and a marked limitation in working in coordination with others; it

seems entirely logical to find a person generally able to socialize with others while finding the

demands of working with others to complete tasks to be difficult.  Further, nowhere in Exhibit

29F, which is a visit note from July 24, 2024, from Claimant's neurologist, does it state that

Claimant did not need (or use) an assistive device and, as noted above, there is simply no

evidence that having normal gait and needing an assistive device are mutually exclusive.  On

remand, the ALJ shall take care that the reasons given for his assessments of the medical

opinions are supported by the record.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND**

**REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  29 JUN 2026

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.